All the next case, please. 11 1695 versus him. Good morning, Your Honor. Charles Valente. I'm here on behalf of Helen's Krasnaya Saunders Kornblath LLP and Carol Mohica as an agent employee of Krasnaya Saunders Kornblath LLP. I would like to reserve three minutes for rebuttal. Four. I'm sorry. Four. Three. Three. Plaintiff in this breach of contract action passed away in December of 2004. His attorneys learned of his passing in January of 2005 and in March of 2005, those attorneys filed a motion to spread the death of record and appoint a special representative under Section 2-1008 of the Code of Civil Procedure. The motion was verified by Carol Mohica and it sought the appointment of Carol Mohica as the special representative. The motion was presented to Judge McDonald. She granted it, appointing Carol Mohica as the special administrator. The defendant appellee in this court admits that when the motion was presented, it was argued their counsel was present and their counsel objected. There was no transcript of the proceedings in the record below. There was no bystanders report filed in the record below. Instead, the only record of this event is Judge McDonald's order. And Judge McDonald's order granting the motion was never vacated or modified in any respect. Defendant appellee never even appealed, cross-appealed from that motion. We submit that order is the law of the case. Let me ask you this question. Isn't that a kind of a widespread practice where you appoint your secretary or somebody in your office as a special administrator on these cases? I'm a commercial litigator. And so I tend to have clients who aren't people. So in checking into this, I spoke to a number of PI lawyers, both on the defense and the prosecution side, the plaintiff side. And yeah, that's what I learned, that it's quite often to appoint a secretary or paralegal to that person. But it's the court who appoints them. They submit the name and the court chooses. The case eventually was transferred to the municipal division and two and a half, three years later, it was tried before Judge Burrell, who entered a verdict for the defense. The defendant appellee sought her attorney's fees from Carol Makika in her individual capacity. And an objection was made that she was only there as a special representative and not in her individual capacity. At that point, defendant appellee came forward with a rule 137 motion. And at that point, it's important to note there was only roughly 40,000 attorney's fees that had been sought, a little less than that. After that, defendant appellee brought numerous motions for rule 137 motions, many of which were unsuccessful, even tried to add a defendant without serving them with process. Their fees mushroomed to approximately $120,000. And the court eventually granted that 137 motion and awarded a sanction against Carol Makika as an agent employee of Krasno Saunders in the amount of about $114,000. In granting the rule 137 motion, Judge Burrell determined that the 2-1000-8 motion that Judge McDonald had granted was legally defective. And according to Judge Burrell, this was because it was verified by Carol Makika and because it did not seek to appoint an heir as the special representative, or as he qualified, special representative. In doing so, Judge Burrell... And there was an heir who existed, is that not right? That's correct. In doing so, Judge Burrell rejected Judge McDonald's grant of the motion, which necessarily held that Carol Makika's verification was proper and that she was a proper party to be a special representative. In doing so, Judge Burrell made no finding that Judge McDonald's order was procured through some sort of fraud. Nor is there any evidence in the record that Judge McDonald was fraudulently induced into entering the order. No material omission or fraudulent statement. Now, in the briefing in this court, the defendant appellee has raised numerous issues about that motion, none of which are supported by the record. Whether it was disclosed that she was an employee of a law firm or what contact she was having with the heir, none of that is in the record. Then what did Judge Burrell base his sanctions on? He felt that it was improper to appoint the heir under the statute. Improper not to... I misspoke. Improper to allow a non-heir to sign the verification and improper for a non-heir to serve, for us to suggest that a non-heir serve as a special representative. We submit that Judge Burrell was wrong to reject the ruling of Judge McDonald, a judge of coordinate jurisdiction to him, in granting that Rule 137 sanction. Moreover, we believe that Judge Burrell's holding that the 2-1008 motion was legally defective was just plain wrong. 2-1008 places no limits on who must verify the motion. Let me ask you this question. If we want to find that the first judge's ruling was unreasonable, let's assume we want to find that the first judge's ruling was unreasonable, is there anything in the record that will support that? The only thing would be if this court were to determine that her view of the law was unreasonable and that the verification was improper and that an heir had to be... No, but there's nothing in the record to put your head on. There is nothing on the record to do that, Your Honor. I agree. I was going to point out that Section 2606 of the Code of Civil Procedure makes it clear that not just a party, but anybody with knowledge can sign a verification. 2-1008, as Justice Gordon indicated, doesn't define who is a proper party. That's left for the court to determine. And the trial judge here, or the judge who was up before Judge McDonald, determined that Carol Movica was a proper party. And there is nothing in the record to suggest that that was an incorrect determination. But even if Judge Burrell was correct that the law should be interpreted in the narrow way that he suggests, that the verification had to be by an heir and that an heir had to be the proper party to be appointed, Rule 137 sanctions are still inappropriate because there was no controlling authority at the time, there's none now, that indicated as much. And it was improper for him to substitute his judgment for Judge McDonald's judgment and determine that in his judgment this argument was frivolous. He should have considered that Judge McDonald, presented with the same facts, determined that this was proper. I want to point out that on this controlling authority subject, the defendant appellees spent pages and pages in their briefing in this court trying to explain why the person verifying this had to be an heir or an heir had to be the person suggested as the special representative. And they never cited any controlling authority on the issue. We believe Judge McDonald's holding on the 2-1008 motion was objectively reasonable and the 2-1008 motion itself, even if it was legally defective because of the reasons given by Judge Burrell, was still objectively reasonable under the circumstances based on the laws that existed at that time. You know, and I would point out, I think that Judge Burrell also erred by failing to consider the uncontradicted testimony of the attorney who signed the motion, saying that he had reviewed the law and made a determination in good faith that this was the appropriate way to file this motion. Now, I want to turn my attention to something else Judge Burrell found, and he found that it was an improper purpose for this motion. He thought the improper purpose was to somehow shield the heir from liability under the contract between the decedent and the defendant appellee. But the problem is there was nothing to insulate here. Our jurisprudence does not impose either tort or contract liability on an heir. Instead, such claims can really only be satisfied out of the decedent's estate. It's clear that Section 2-1008 does not impose such liability on special representatives. There's nothing in there. The only thing in there, it says, if you have a claim against a special representative and you don't have a claim pending in the propay court, your limit is whatever the liability insurance that's available. You can't go against any other assets. Here, there was no liability insurance, and here the creditor failed to file a claim in the probated estate. They had no ability to recover against the estate of the decedent, and they had no ability to recover against the heir. There was nothing to insulate. The very idea of Section 2-1008 is to allow survival claims which would otherwise abate upon the death of a partner. The whole idea would be thwarted, though, if we started imposing liability on special representatives, because not very many people are going to want to substitute in and then be subject to liability under a contract that they didn't sign. So counsel, you're saying there was no authority then which would allow Judge Burrell's position to prevail, and there's none now. That's correct, Your Honor. Now, Judge Burrell operated here, his opinion dispulsed it, that he thought there's somehow some unfairness in the fact that the defendant appellee, if they had lost a trial, would be subject to attorney's fees recovery, but when they won, they couldn't collect attorney's fees. But that had nothing to do with who the special representative was. The reason that happened was because the defendant appellee did not pursue a claim in the probate court. The identity of the special representative was irrelevant. And also, I think this court should consider that there really is no unfairness here. I mean, it's more unfair to me to say, yes, your opponent in this litigation died, which incidentally will help you win because of the Dead Man's Act and their inability to testify, but that opponent died, but don't worry about it. We'll let you reach into somebody else's pocket to satisfy the debt. That puts them in a better off position than if their opponent had lived. Finally, I just want to address the sanction that Judge Burrell entered here. We believe it was excessive, even if you accept his position on the law, which we don't, and even if this court should find that it was, our position was not objectively reasonable, we think the sanction is of what attorneys fees would have been incurred if Judge McDonald had said on that first day, you know what, I've looked at your motion. I can't appoint her as the special representative, even though you asked for it. I need an heir to the special representative. If she had said that, Dr. Michael Sarche would have submitted himself as the special representative and the case would have proceeded exactly as is. So in summing up, that's not in the record as to what they would have done. I'm sorry. That's not part of the record. You're speculating. You know, I believe Dr. Michael Sarche submitted an affidavit that indicated that he would have verified the petition if asked to and that he wanted to pursue this claim. But I guess the point is we were never given a chance to develop that part of the record. In summing up, I'd like to say we believe this case should be reversed and remanded with instructions to deny the motion. Alternatively, it should be remanded for a recalculation of the fee award. Good morning. My name is Mark Peter Standa. I represent the Nevada's Legion, the Cross Appellant and Appellant here. What do you have to say about this procedure of appointing your secretaries as special administrators? Is this a widespread process? No, and there's nothing in the record that supports that assertion whatsoever. Nothing in the record. In fact, what's curious is that he makes that assertion before. The most curious thing is that the only things that are in the record is that these attorneys never practiced this kind of law because they were corporate lawyers like he just told you and they never represented individuals. You're representing to this court that it is not routine practice in Illinois for people's secretaries or clerks to be appointed as special administrators in these cases. That's not your representation. That's my understanding, Your Honor. I worked at Preflin Social for about 15 years and we did lots of personal injury cases, a lot of death cases, worked with a lot of plaintiff's counsels. Yeah, but you guys represented the defense, not the plaintiffs. The plaintiffs, you know, when I practiced, because that was 17 years ago, but, you know, there used to be a special clerk in Maddox's office. You just handed the order to the clerk and they would stamp it. It didn't make a difference if you had Donald Duck as a special administrator. Yes, but I think, you know, that's not the thrust of Judge Morell's ruling here. That's a red herring that's been thrown out. He didn't say that it had to be somebody else. He didn't say that she was the inappropriate person to be the special administrator. He said she was the wrong person and violated the statute because she verified the motion. And the motion specifically says that one of the parties entitled to participate in the estate, i.e., one of the parties, says shall, the word shall verify the motion. And that's not what happened. They used their secretary. It's actually a paralegal, Mr. Henry Krasnow's personal assistant. They used her to verify the motion and she had no knowledge of the operative facts. And that was contrary to the expressed language of Section 1008. All right. Would it be the only way for us to affirm here we'd have to find the action of the first judge to be unreasonable? Would that be correct? No, because what the Judge Burrell's ruling was, he doesn't say anything that the judge did below was wrong, although he overruled her order. That order was vacated by Judge Burrell, not expressly by implication of his ruling, because his ruling... You mean you could vacate an order by implication? Well, it's an interlocutory order. He addressed the motion that led to the order. He found specifically in his order of May 17, 2011, the order from which they appeal, which is in the record in their appendix at A2, and it's C1417 of the record, he specifically found that there, the attorneys for the dead plaintiff, who now the plaintiff is dead, we have to have the time frame here now, he says, paragraph 2, the court found a violation of Section 2-108B in the filing of the motion to spread death, and that due to said filing of that motion, an appropriate sanction under Rule 137 was entered. Then he goes on, he repeats it one more time on page 2, that's C14 of the record at A3 in the appendix. This is Judge Burrell's ruling. He says, after I have further reviewed the case history of this case and all subsequent submissions to this court, I took it under advisement, I'm finding as follows, and he spells it out here. But what was wrong in that filing of that motion? Multiple things, Your Honor. Thank you for asking. Many factual things were wrong about that filing, and this is at the appellant's appendix at A7 is the motion to spread death of record. The motion starts out, the plaintiff, Theodore Sarche, by his undersigned counsel. That's factually incorrect. The plaintiff was dead. They were now his undersigned counsel at that time. When he died, they had no authority to act. They had no authority to file this motion unless they got a live human being to come and authorize them to do so and bring that live human being before the court. So the motion was factually and legally false and not well-grounded. Did the son say, you know, I had confidence in this lawyer, I'd do anything he'd say? I mean, isn't that what he said? Yes, and that's not relevant to the motion. There's nothing before this court of record from the two affidavits that Dr. Sarche submitted that he made any of those statements before this motion was filed. And that's why Judge Burrell, in his motion, even indicates that he has doubt as to whether the Krasnow firm was in contact with Dr. Sarche before they filed this motion. And that's at the bottom of the second paragraph on page two of his order, where he says the fact that there was some evidence that the Krasnow firm may have been in contact with the deceased living heir. He doubts, he doubted that they were in contact with him, with the heir. One heir, there was four heirs here according to their motion itself. And they're trying to say that there was only one heir here that they were in contact with. And in fact, they violated Judge McDonald's order that granted their motion because they didn't give notice to all of the heirs, plural, that her order required them to give. And the special administrator never gave any notice to any of the heirs. And not only did Judge Burrell's order, in number four, that's in the record at C184, it's in their appendix also, at A12, that order specifically said that plaintiff's counsel shall give notice of this order by certified mail to all known heirs. Never done. They gave notice. Did Judge Burrell refuse to vacate the order? Did he refuse to vacate Judge McDonald's order? He did not refuse to vacate it, no. Did he vacate it? I think he vacated it by implication. Yes, Your Honor, because he said the motion that from which the order came. See, that's a new concept to me, vacating by implication. I haven't found that to be in the law yet. I've been around for over 53 years. And I haven't found that yet. Vacating an order by implication, that's something very new to me. The reason I put it that way, Your Honor, is that you have a case that says that you could vacate an order by implication. I'd like to see one. What the judge said was that the filing of the motion. Those last arguments that you made, I can get a word in here, were they the basis of the sanctions when you were talking about the defects in the order? Yes, the judge found that the motion and the filing of this motion, it was a defective motion. That's how it led to a defective order that I say by implication was vacated, because he said this order was, their filing of this order was a sanctionable motion. And frankly, because he was dead, and they say they're acting on behalf of a dead man, this order, this motion, was a nullity on its face. Because the case of the Legion, as Judge Burrell put it, there was, well, Clay versus Huntley is the 2003 First District case he cited. He stated in his order here in the middle paragraph that there was a slew of other cases holding that an attorney's representation of the deceased client terminates with the client's death. They still never come in and said, who was the live human being that authorized this? And Judge Burrell was saying that this motion on its face is factually and legally defective, but mostly factually defective because it purports to be brought in the name of a dead man, and they had no authority to bring any motion on behalf of a dead man. Counsel, do you have any case law that says that someone from an attorney's office cannot be appointed as special administrator? No. And Judge Burrell didn't take that position, and we've not taken that position. If they had what the statute says is that the motion to get some person appointed as a special administrator, by the way, it's a representative. We're not under probate here. Special representative. Right. Special representative. And what the statute specifically says is that one of the heirs, they say the person entitled to participate, shall sign the verification of the motion. And that's not what happened here. They had the paralegal, their purported or their per-offered special representative, give the verification. They didn't even have an heir doing it. That was part of what the judge found to be the insulation scheme, trying to insulate their true client, who they now admitted after we caught them and we filed a motion to bar the Krasnow firm from further living in the case. And this is after trial, and we realized they don't have a live, bona fide client they're representing. And we filed a motion. I filed a motion for sanctions, and I filed a motion to bar them from further living in the case until they would explain who their client was and authorize them to continue this lawsuit. And they came up with affidavits and arguments that they've proffered to this court and that are part of the record that specifically says, specifically said, we were authorized by one of the multiple heirs, that's the doctor, Dr. Michael Sarche, the close friend of Henry Krasnow, as you pointed out, Judge Gordon, who specifically authorized us to act and specifically authorized us to file this motion, and on whose behalf we acted. But after saying that to the court in order to avoid the motion to bar them and the sanctions motion, they say, but that doesn't mean he's our client. So there's this tremendous tension here because they're acting without the authority. And they have no right to act without the authority of a live, bona fide client. They're trying to have it both ways, and they can't. They can't on the one hand say, Dr. Sarche authorized us to do that 1008 motion after his father died. We acted on behalf of Dr. Sarche. We acted pursuant to his authorization, and we took legal action in the state of Illinois on behalf of Dr. Sarche, and we filed this motion on behalf of Dr. Sarche. But on the other hand, that doesn't mean he's our client. That doesn't mean he's the plaintiff in this case. What we argued to Judge Burrell below, and what I believe Judge Burrell's decision accepted is that this one of these errors, in particular this Dr. Sarche who authorized his old friend Henry to do this motion after the death of his father, he needed to, he must have, he had to because the statute says shall. He had to verify this motion. Someone else could have been the special representative, but he had to verify that he was approving this special representative. And that's the public policy argument that's very important here. You can't have these attorneys. And let's say for the sake of argument, it is a common practice to have somebody's secretary. But it's not a common practice, never has been a common practice to have the law firms using those secretaries to violate section 108 and have their secretaries verify the motion. So what are you reading? 2108B says, B1, if no petition for letters of office for decedents of state has been filed, the court may appoint a special representative for the deceased for the purpose of prosecuting the action. Next sentence. The appointment, that was just referenced, the appointment shall be on verified motion of any party who appears entitled to participate in the decedents of state. But it doesn't require it to be an heir. And then it just requires them to recite the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed. I don't see what you're talking about. The word heir does not appear. We're all using the word heir. You stood up here three times and told us that it shall be an heir. I just read the sentence, Your Honor. It says, the appointment of the special administrator shall be on the verified motion of any party who appears entitled to participate. We're all using the word heirs as synonymous with the phrase party entitled to participate. No, I don't think we are. You are using that. Well, their motion used it. The 1008 motion used it, Your Honor. They followed and tracked the language. It says, quote unquote, the appointment shall be on verified motion of any party who appears entitled to participate in the deceased estate, reciting the names and last known addresses of all known heirs and the legatees and executor named in any will that has been filed, period. And there was no will filed. There was no letters of office. And this is all right out of the motion itself. And in the motion itself, they specifically state on the page two, which is A08 in their appendix, that the individuals, plural, who appear entitled to participate in Mr. Sarche's estate are Michael Sarche, that's Dr. Michael Sarche, and his children. They don't say in their motion that the person who appears entitled to participate in the estate is their paralegal because, of course, she's not. She's Mr. Henry Krasnow's secretary. She's not entitled to participate in the estate, as an heir would. Everybody, Your Honor, maybe we haven't made it clear, but that phrase, appears entitled to participate in the estate, is being used synonymous with the word heirs. And the statute verifies that. I guess it's about time somebody interpreted that statute. You know, interesting that we know and did found a case on point, Your Honor. And back to the motion, you were asking me when I got side questions, what are the other factual problems that invalidated this motion? It's not simply the fact that they were factually wrong, dead wrong, when they said they could represent a dead man. And they said, now comes the dead man by his assigned counsel, undersigned counsel. Because dead man had no undersigned counsel at that point. Because the authority to act as these lawyers ended when he died. Unless another he believed. What's the case on point? You're almost out of time. There are multiple in our brief, Your Honor. Clay versus Huntley is the one the judge cites in the middle of his brief. In our brief, Your Honor, our opening brief, we cite various cases on page 17, including Clay versus Huntley, Keller v. Walker, Washington versus Carleville Health Center, In re Marriage of Fredrickson. In re Marriage of Fredrickson is a case that addressed 1,008, Your Honor. It was a Second District 1987 case that says, without substitution of a proper party under Rule 1,008, the deceased attorney cannot proceed at all. And that's important to look at the first part of 1,008. B, which says, if a party for an action dies and the action is one that survives, the proper party or parties may be substituted. That's what Judge Burrell found wasn't done here. This statute specifically, the adjective verified modifies the noun motion, requiring that this motion had been verified by a person, a party, entitled to participate in the decedent's estate. And it wasn't. It was brought in the name of a dead man and verified by their secretary in violation of the. You need to conclude, counsel, your time is up. Thank you. I also have a cross appeal, which I won't address now, which is basically stating that the jurisdictional decision that Judge Burrell made was improper because Dr. Michael Sarche, when he authorized the Krasnow firm to file this motion after his father died, by authorizing that motion to be made in the courts in Illinois, and these lawyers acting on behalf of the doctor and filing the motion expressly on his behalf to get him money under the contract, because it was a breach of contract place, that subjected him to the jurisdiction of the court. Mr. Green's going to stand up and argue why that's wrong and that decision should be upheld. If I could get a minute or two to respond to that, if that's possible, it's the cross of Pelley. I'd appreciate that. But that's the argument in a nutshell. You've already had three additional minutes because he had three in the story. Thank you, Your Honor. It's an abuse of discretionary standard to uphold Judge Burrell. He considered this case very carefully. He worked on this case from 2006 through 2012 when he rendered his decision. He took his time. He read mounds of records, and he made a very distinct order that saying the filing of this motion was a defective filing of a defective motion. And therefore, any order entered after that motion was filed is a nullity because it was filed in violation of express requirements of Section 2008B and also in violation of Rule 137 because it was not well-grounded in the facts. Thank you, Judge. Let me just point one little thing out to you. In your cross-appeal, you're not appealing the appropriateness of the first judge's order. So in effect, the appropriateness of that order is not unappealed before us, correct? No, not correct. It is, Judge. We don't appeal that order. That was an odd argument they made. We wouldn't appeal that because our judge's decision. It's not a Donald's order? Right. That isn't an order for us to appeal. It was an interlocutory order until Judge Burrell finally at the end of the case made his decision, finding that the motion leading to that order was a nullity. Well, then it's a final order. And then in a final order, you can appeal in an interlocutory order. But I don't want to argue the question with you. That's what the way the law is. All right, three minutes, rebuttal. Thank you, Your Honors. First, Justice Gordon, you mentioned Dr. Sarche and what he had said he would do. I think in the record at Common Law 1198 is his affidavit where he says what he would have done if Judge McDonald had denied that motion. I read Section 2-1008 very differently than counsel. I believe that you have to file a verified motion of a certain party. It doesn't say who has to verify that motion. It just says it has to be verified. You know what? Maybe I'm wrong, and maybe he's right. But there was no controlling authority at any time through now that says what counsel has argued in this court. So we think Rule 137 sanctions are invalid on that basis alone. I do want to comment about counsel suggesting a lot was wrong when Judge McDonald had the motion presented to her. Motion was presented. It was verified. It sought the appointment of a particular person as the special representative. They objected to that motion in court. They've conceded that here. There's no record of what was said. They either objected on the basis they're making now, and Judge McDonald rejected that and ruled against them, or they failed to raise those objections, in which case their arguments should be waived at this point. But the bottom line is there was a hearing by the judge, and she entered an order. And the presumption is that she considered the motion and considered the appropriate factors and made a good faith determination that this is what the ruling should be. And I'd be remiss if I didn't comment on this. I mean, while counsel has spent a lot of time impugning the integrity of the attorneys in this case, I think it's really, it just goes beyond the pale when he questions the integrity of Judge McDonald by suggesting that she never read the motion and that her clerk entered the order. And I just think that's beyond the pale. But the bottom line is everything was in good faith. It was presented to Judge McDonald, and she thought it was correct and granted the motion. She knew that the gentleman had died before that motion was presented. That's why they wanted a special representative. It was improper for Judge Burrell to effectively determine that she was wrong and then sanction the attorneys below on that basis. We again would ask that the court reverse and remand the instructions to deny the motion. Thank you. Thank you, counsel. This matter will be taken on their advice. It's a very interesting case, I want you guys to know. Very interesting case.